UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SARAH SIMMONS, | ) |
| | ) CIVIL ACTION FILE |
| Plaintiff, | ) File No. _____ |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| COBB COUNTY, GEORGIA, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**

Plaintiff Sarah Simmons ("Plaintiff" or "Ms. Simmons") files this Complaint for Equitable Relief and Damages against Defendant Cobb County, Georgia ("Cobb County" or "Defendant") showing the Court the following:

### INTRODUCTION

1. Ms. Simmons is a former employee of Defendant, having worked for Defendant from approximately 2003 through 2022.

2. Ms. Simmons asserts claims for disability discrimination, retaliation, and failure to accommodate under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"). Ms. Simmons seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory damages, punitive damages, and attorney's fees and costs of litigation.

## Jurisdiction and Venue

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4. Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant Cobb County conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## Exhaustion of Administrative Remedies

5. On May 11, 2022, Ms. Simmons filed a charge of discrimination – Charge No. 410-2022-03015 – with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which she complains.

6. Ms. Simmons received her Dismissal and Notice of Rights on April 18, 2024.

7. Ms. Simmons brings this suit within ninety (90) days of the receipt of her Determination and Notice of Rights and, thus, exhausts her administrative remedies.

## The Parties

8. Ms. Simmons is a citizen of the United States and submits herself to the jurisdiction of this Court.

9. Ms. Simmons is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

10. Ms. Simmons is a person with a disability because she has actual mental impairments –major depressive disorder, severe anxiety and post-traumatic stress syndrome – causing substantial limitations in one or more major life activities, because she has a record of impairment, and because Defendant regarded her as having an impairment.

11. Ms. Simmons is capable of performing the essential functions of her job as a Quality Assurance Specialist with an accommodation.

12. Cobb County is an employer engaged in commerce or in an industry affecting commerce within the meaning of the ADA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

13. Cobb County is subject to the Court's jurisdiction and may be served with process pursuant to Rule 4 of the Federal Rules of Civil Procedure by serving Dr. Jackie R. Morris, County Manager, 100 Cherokee Street, Marietta, Georgia 30090.

## Statement of Facts

14. Ms. Simmons began her employment with Cobb County as a Public

safety Dispatcher in approximately 2003.

15. Ms. Simmons performed her job well was promoted several times, including but not limited to, Public Safety Training Officer and Shift Supervisor.

16. The last position Ms. Simmons held was Quality Assurance Specialist, beginning in approximately December 2018.

17. As a Quality Assurance Specialist, Ms. Simmons's job duties included providing training on quality assurance.

18. Another one of Ms. Simmons's duties was to review 911 emergency calls, some of which were violent.

19. In September 2020, Ms. Simmons's brother was murdered.

20. Following her brother's murder, Ms. Simmons suffered severe mental health impairments and was diagnosed and treated for three corresponding medical conditions.

21. Each of Ms. Simmons's mental health impairments substantially limit major life activities, including but not limited to sleeping, interacting with others, regulating emotions and thoughts, and concentration and the major life functions of her neurological system.

22. Each of Ms. Simmons's mental health impairments constitute a disability as defined by the ADA.

23. Despite Ms. Simmon's disabilities, she was able to perform the essential functions of her job with an accommodation.

24. In approximately October 2020, Ms. Simmons notified Cobb County's Human Resources department about her disabilities and requested a reasonable accommodation.

25. At that time, Cobb County informed Ms. Simmons that she would just have to apply to vacant positions, thereby refusing to engage in the interactive process or provide a reasonable accommodation in violation of the ADA.

26. In approximately August 2021, Ms. Simmons again requested a reasonable accommodation for her disabilities.

27. Specifically, Ms. Simmons requested her duties be adjusted to ensure she was no longer required to handle or review violent 911 calls as such calls triggered severe symptoms associated with Ms. Simmons's disabilities.

28. As an accommodation for her disabilities, Cobb County changed Ms. Simmons's duties to focus on the training responsibilities.

29. Ms. Simmons was able to perform all essential functions of her job with the benefit of this change in duties accommodation.

30. However, Cobb County later instituted a new policy that required all Quality Assurance Specialists to periodically handle 911 calls, thereby reversing the

benefit of Ms. Simmons's accommodation.

31. Cobb County also required Ms. Simmons to attend an Active Assailant training class, which also would have been counter to the benefit of Ms. Simmons's accommodation.

32. Understanding the Active Assailant training class would severely impact and exacerbate her disabilities, Ms. Simmons requested the accommodation of delaying the training course.

33. Cobb County did not approve Ms. Simmons's request to delay the training course.

34. Ms. Simmons took FMLA-protected medical leave from approximately September 23, 2021 through December 16, 2021 to receive treatment for her disabilities.

35. On approximately December 6, 2021, before her return to work date, Ms. Simmons emailed Cobb County Manager, Dr. Jackie McMorris, and requested the accommodation of a transfer to another position.

36. Dr. McMorris stated that the County had made "every accommodation" for Ms. Simmons and "there's nothing more that [she] can do."

37. Cobb County refused to provide Ms. Simmons a reasonable accommodation in violation of the ADA.

38. Instead, the only option Cobb County gave Ms. Simmons was to extend her unpaid medical leave for approximately six months through June 22, 2022.

39. Since mid-2021, Ms. Simmons has applied for many vacant positions with Cobb County, outside the Department of Public Safety's E911 Center, to no avail.

40. Ms. Simmons was qualified for all vacant positions to which she applied, and all such positions were at pay grades either comparable or below that of her Quality Assurance Specialist position.

41. Despite her qualifications and need for the reasonable accommodation of a transfer to a vacant position, Cobb County refused to transfer Ms. Simmons to any of the vacant positions for which she was qualified.

42. Upon information and belief, the individuals Cobb County hired for the vacant positions were less qualified than Ms. Simmons, outside her protected class of disabled individuals, and had not made repeated requests for a reasonable accommodation.

43. On or about November 1, 2022, Cobb County terminated Ms. Simmons's employment.

44. Cobb County stated it terminated Ms. Simmons's employment because she was unable to return to work in a position within the Public Safety Department.

45. Cobb County terminated Ms. Simmons' employment because of her disabilities, rather than accommodating her disabilities; because it regarded her as disabled; and in retaliation for her requesting an accommodation under the ADA.

46. In discriminating and retaliating against Ms. Simmons in violation of the ADA, Defendant acted willfully, wantonly, and intentionally to harm Ms. Simmons and her federally protected rights.

47. Additionally, and in the alternative, Defendant acted with reckless disregard for Ms. Simmons and her federally protected rights.

48. The effect of Defendant's above-stated actions has been to deprive Ms. Simmons of employment opportunities, income in the form of wages, prospective employment benefits, including social security and other benefits to which she would have been entitled but for Defendant's illegal actions.

49. The effect of Defendant's above-stated actions has also caused Ms. Simmons to suffer out-of-pocket losses and mental and emotional distress for which she seeks redress.

## COUNT I
### Violation of ADA – Regarded As Disabled

50. Ms. Simmons incorporates by reference all the preceding paragraphs of the Complaint.

51. At all times relevant hereto, Defendant has been subject to the

requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

52. At all times relevant hereto, Ms. Simmons was an individual with disabilities as defined under the ADA, 42 U.S.C. § 12102(1)(C) because Defendant regarded her as a person with an impairment as defined by the Act.

53. Moreover, at all times relevant hereto, Ms. Simmons has been a qualified individual with disabilities as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of the job with an accommodation.

54. Defendant terminated Ms. Simmons because it regarded her as disabled.

55. Defendant's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

56. As a direct and proximate result of Defendant's intentional discrimination, Ms. Simmons has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

57. The actions taken against Ms. Simmons by Defendant have caused her to suffer both monetary and non-monetary damages.

58. Pursuant to the ADA, Ms. Simmons is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory/emotional damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

59. Accordingly, Ms. Simmons is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendant's violation of her rights under the ADA.

## COUNT II
**Actual Discrimination and Failure to Accommodate in Violation of ADA**

60. Ms. Simmons incorporates by reference all the preceding paragraphs of the Complaint.

61. At all times relevant hereto, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

62. At all times relevant hereto, Ms. Simmons was an individual with disabilities as defined by the ADA, 42 U.S.C. § 12102(1)(A).

63. Defendant was aware of Ms. Simmons's disabilities and history and record of disability.

64. At all times relevant hereto, Ms. Simmons has been a qualified individual with disabilities as that term is defined by 42 U.S.C. § 12111(8) and able

to perform the essential functions of his job with an accommodation.

65. Ms. Simmons' disabilities substantially limited one or more major life activities including but not limited to sleeping, interacting with others, regulating emotions and thoughts, and concentration and the major life functions of her neurological system..

66. Ms. Simmons requested reasonable accommodations from Defendant relating to her disabilities including but not limited to a change in her duties, temporary medical leave, and a transfer to a vacant position.

67. Defendant denied Ms. Simmons' accommodation requests and terminated her employment because of her disability.

68. Defendant's actions amount to a violation of Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

69. As a direct and proximate result of Defendant's intentional discrimination, Ms. Simmons has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

70. The actions taken against Ms. Simmons by Defendant have caused her

to suffer both monetary and non-monetary damages.

71.     Pursuant to the ADA, Ms. Simmons is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory/emotional damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

72.     Accordingly, Ms. Simmons is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendant's violation of her rights under the ADA.

## COUNT III
## Retaliation in Violation of the ADA

73.     Ms. Simmons incorporates by reference all the preceding paragraphs of the Complaint.

74.     At all times relevant hereto, Defendant has been subject to the requirements of the ADA.

75.     At all times relevant hereto, Mr. Simmons was an individual with disabilities as defined by the ADA, 42 U.S.C. § 12102(1)(A).

76.     In approximately October 2020, August 2021, and December 2021, Ms. Simmons engaged in protected activity under the ADA when she requested reasonable accommodations.

77.     Defendant failed to reasonably accommodate Ms. Simmons in violation

of the ADA.

78. Defendant terminated Ms. Simmons's employment in retaliation for her repeated, protected requests for accommodations.

79. Defendant's actions in retaliating against Ms. Simmons following her requests for reasonable accommodation were committed with reckless disregard for her right to be free from retaliatory treatment in violation of the ADA.

80. The effect of Defendant's above-mentioned conduct has been to deprive Ms. Simmons of equal employment opportunities and benefits due to her willingness to engage in protected activity.

81. The actions taken against Ms. Simmons by Defendant have caused her to suffer both monetary and non-monetary damages.

82. Pursuant to the ADA, Ms. Simmons is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory/emotional damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

83. Accordingly, Ms. Simmons is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendant's violation of her rights under the ADA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

(a) A declaration that Defendant has violated the rights of Plaintiff under the federal statutes listed above;

(b) A permanent injunction against Defendant enjoining Defendant from further violations of the federal statutes listed above;

(c) Judgment in her favor and against Defendant under all counts of this Complaint;

(d) Order Defendant to make Ms. Simmons whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, taking into account all raises to which Ms. Simmons would have been entitled, together with interest thereon, all in an amount to be proven at trial;

(e) Order that Ms. Simmons be reinstated or, in the alternative, be awarded front pay;

(f) Grant to Ms. Simmons compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional

distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(g)     Grant to Ms. Simmons punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for its conduct toward Ms. Simmons and deter Defendant from similar conduct in the future for Defendant's willful and intentional violations of federal law;

(h)     Grant to Ms. Simmons a jury trial on all issues so triable;

(i)     Grant to Ms. Simmons her reasonable attorney's fees and reasonable expert witness fees together with any and all other costs associated with this action; and

(j)     Grant such additional monetary and equitable relief as the Court deems proper and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted this 17th day of July 2024.

**LEGARE, ATTWOOD & RAGAN, LLC**

**<u>Amelia A. Ragan</u>**
Georgia Bar No.
aaragan@law-llc.com

125 Clairemont Ave, Suite 515
Decatur, Georgia 30030
Tel: (470) 823-4000
Fax: (470) 201-1212
Counsel for Plaintiff